## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMMED RAHMAN, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>AMNEAL PHARMACEUTICALS LLC, AMNEAL PHARMACEUTICALS, INC., and AVKARE, INC.,<br><br>               Defendants. | Civil Action No. 2:20-cv-03757-BRM-JAD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Mohammed Rahman ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals, Inc. (collectively, "Amneal") and AvKare, Inc. ("AvKare") (all collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.	This is a class action lawsuit regarding Defendants' manufacturing, distribution, and sale of the generic medication metformin that contains dangerously high levels of N-nitrosodimethylamine ("NDMA"), a carcinogenic and liver-damaging impurity.

2.	Metformin is a prescription medication that has been sold under brand names such as Glucophage. Metformin is used to control high blood sugar in patients with type 2 diabetes. However, Amneal's manufacturing process has caused metformin to contain dangerously high levels of NDMA.

3.	NDMA is a semivolatile organic chemical. According to the U.S. Environmental

Protection Agency, NDMA "is a member of N-ni-trosamines, a family of potent carcinogens." While NDMA is not currently produced in the United States other than for research purposes, it was formerly used "in production of liquid rocket fuel," among other uses. NDMA is listed as a "priority toxic pollutant" in federal regulations. *See* 40 CFR § 131.36. Exposure to NDMA can cause liver damage and cancer in humans. NDMA is classified as a probable human carcinogen, and animal studies have shown that "exposure to NDMA has caused tumors primarily of the liver, respiratory tract, kidney and blood vessels."

4.       On March 2, 2020, Valisure, an online pharmacy registered with the U.S. Drug Enforcement Agency and Food & Drug Administration, "detected high levels of N-Nitrodimethylamine ('NDMA') in specific batches of prescription drug products containing metformin."[1]  This included metformin manufactured by Amneal.[2]

5.       On May 29, 2020, Amneal announced it was recalling "all lots of Metformin Hydrochloride Extended Release Tablets, USP, 500 mg and 750 mg" due to testing that showed the presence of NDMA amounts "above acceptable FDA levels."[3]

**A. Metformin Is Marketed As Safe**

6.       Amneal has always marketed metformin as a safe and effective product and has continued to do so despite the findings of Valisure.

---

[1] VALISURE, VALISURE CITIZEN PETITION ON METFORMIN 1 (2020), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Metformin-v3.9.pdf (last accessed June 26, 2020) (hereinafter "VALISURE PETITION").

[2] *Id.* at 9.

[3] FOOD & DRUG ADMIN., AMNEAL PHARMACEUTICALS LLC ISSUES VOLUNTARY NATIONWIDE RECALL OF METFORMIN HYDROCHLORIDE EXTENDED RELEASE TABLETS, USP, 500 MG AND 750 MG, DUE TO DETECTION OF N-NITROSODIMETHYLAMINE (NDMA) IMPURITY, June 1, 2020, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/amneal-pharmaceuticals-llc-issues-voluntary-nationwide-recall-metformin-hydrochloride-extended (last accessed June 26, 2020).

7.      Metformin is one of the most successful drugs in history.  Metformin was the fourth most prescribed medication in the United States in 2017, with over 78.6 million prescriptions.[4]

8.      On Amneal's website page for its generic medications, Amneal touts that it "deliver[s] quality, trust, and value."

9.      Amneal also notes that "for close to 20 years [consumers] have associated the Amneal name with an unwavering commitment to quality, service, and value."

10.     AvKare likewise touts on its website that it is "[y]our trusted industry source of pharmaceuticals."

**B.  Metformin Contains Dangerous Levels Of NDMA**

11.     Contrary to the above assertions, metformin contains dangerously high levels of NDMA that would not be present if the medication were properly manufactured.  As noted in paragraph 4, *supra*, Valisure has found unacceptable levels of NDMA in samples of metformin, including samples from Amneal.

12.     While the cause of the NDMA contamination in metformin is still being investigated, Valisure notes that "the presence of NDMA in metformin products may be primarily due to contamination during manufacturing as opposed to a fundamental instability of the drug molecule."[5]

13.     The FDA has "set strict daily acceptable intake limits on NDMA in pharmaceuticals of 96 nanograms."[6]  But Valisure found that Amneal's metformin has an

---

[4] *The Top 300 of 2020*, CLINCALC, https://clincalc.com/DrugStats/Top300Drugs.aspx (last accessed June 26, 2020).
[5] VALISURE PETITION 3.
[6] *Id*. at 1.

NDMA content that is between 9 and nearly 17 times the daily intake limit[7]:

| Company | Dose (mg) | Type | Lot | NDMA (ng/tablet) | Common Tablets/Day | Times Over Acceptable Daily Intake Limit of NDMA |
|---------|-----------|------|-----|------------------|--------------------|--------------------------------------------------|
| Amneal Pharmaceuticals LLC | 750 | Metformin ER | AM180770A | 450 +/- 100 | 4 | 9.4X |
| Amneal Pharmaceuticals LLC | 500 | Metformin ER | AM190107AA | 395 +/- 53 (623 +/- 28)*[8] | 4 | 16.5X |

14.    The presence of NDMA in metformin is particularly troubling because the medication is taken daily.[9]

15.    Pursuant to its findings, Valisure recommended a recall of Amneal's metformin medications.[10]

16.    On May 29, 2020, nearly three months after Valisure's study, Amneal announced it was recalling "all lots of Metformin Hydrochloride Extended Release Tablets, USP, 500 mg and 750 mg" due to testing that showed the presence of NDMA amounts "above acceptable FDA levels."[11]

## C. Plaintiff Was Harmed By Purchasing And Consuming Defective Metformin Manufactured By Defendants

17.    Plaintiff and the Class were injured by the full purchase price of their metformin medications.  These medications are worthless, as they contain harmful levels of NDMA.  As the medications expose users to NDMA well above the legal limit, the medications are not fit for

---

[7] *Id*. at 9.
[8] The asterisk (*) denotes data generated by Emery Pharma from the same batch.  VALISURE PETITION 8.
[9] *Id.* at 1.
[10] *Id.* at 11-12.
[11] FOOD & DRUG ADMIN., AMNEAL PHARMACEUTICALS LLC ISSUES VOLUNTARY NATIONWIDE RECALL OF METFORMIN HYDROCHLORIDE EXTENDED RELEASE TABLETS, USP, 500 MG AND 750 MG, DUE TO DETECTION OF N-NITROSODIMETHYLAMINE (NDMA) IMPURITY.

human consumption.  Plaintiff is further entitled to statutory damages, damages for the injury

sustained in consuming high levels of acutely-toxic NDMA, and for damages related to

Defendants' conduct.

18.    Plaintiff brings this action on behalf of himself and the Class for equitable relief

and to recover damages and restitution for: (i) breach of the implied warranty of merchantability,

(ii) unjust enrichment, (iii) fraudulent concealment, (iv) fraud, (v) conversion, (vi) violation of

California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and (vii) violation

of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

## PARTIES

19.    Plaintiff Mohammed Rahman is a citizen of California who resides in Alameda

County, California.  Mr. Rahman has been taking metformin since 1993.  During all relevant

time periods, Mr. Rahman was prescribed, purchased and consumed metformin manufactured

by Defendants, for which he paid a co-pay of approximately $12.50.  Mr. Rahman originally

learned about the metformin defect on the news.  Further investigation revealed that Mr. Rahman

has been using the defective metformin manufactured by Amneal for some time.  When

purchasing metformin from Defendants, Mr. Rahman reviewed the accompanying labels and

disclosures, and understood them as representations and warranties by the manufacturer,

distributor, and pharmacy that the medications were properly manufactured, free from defects,

and safe for their intended use.  Mr. Rahman relied on these representations and warranties in

deciding to purchase metformin from Defendants, and these representations and warranties were

part of the basis of the bargain, in that he would not have purchased metformin from Defendants

if he had known it was not, in fact, properly manufactured and free from defects.  Mr. Rahman

also understood that each purchase involved a direct transaction between himself and Amneal

because his medication came with packaging and other materials prepared by Amneal, including representations and warranties that his medications were properly manufactured and free from defects.

20.     Defendant Amneal Pharmaceuticals LLC is a company incorporated under the laws of Delaware with a principal place of business at 400 Crossing Boulevard, Third Floor, Bridgewater, New Jersey 08807.  Amneal conducts substantial business in the United States, and specifically in the States of New Jersey and California.  Amneal has been engaged in the manufacturing, distribution, and sale of defective metformin in the United States, including in the States of New Jersey and California.

21.     Defendant Amneal Pharmaceuticals, Inc. is a corporation incorporated under the laws of Delaware with a principal place of business at 400 Crossing Boulevard, Third Floor, Bridgewater, New Jersey 08807.  Amneal conducts substantial business in the United States, and specifically in the States of New Jersey and California.  Amneal has been engaged in the manufacturing, distribution, and sale of defective metformin in the United States, including in the States of New Jersey and California.

22.     Defendant AvKare, Inc. ("AvKare") is a Delaware corporation with its principal place of business at 615 N. 1st Street, Pulaski, Tennessee 38478.  At all times material to this case, AvKare has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded metformin in the United States, including in the States of New Jersey and California. Upon information and belief, AvKare repackages and/or relabels metformin manufactured by Amneal, and is a wholly owned subsidiary of Amneal.

## JURISDICTION AND VENUE

23.     This Court has personal jurisdiction over Defendants because Defendant Amneal

maintains its principal place of business in New Jersey and Defendants have purposefully availed themselves of this forum by engaging in suit-related conduct in this District, including the manufacturing and sale of contaminated metformin medications.

24.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

25.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Amneal maintains its principal place of business in this District and a substantial portion of the events giving rise to this action occurred in this District.

## CLASS ALLEGATIONS

26.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased metformin manufactured by Amneal (the "Class"). Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

27.    Plaintiff also seeks to represent a subclass of all Class members who purchased metformin in California (the "Subclass").

28.    Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

29.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and the State of California and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class and Subclass members is known by Defendants and may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

30.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class and Subclass members.  These common legal and factual questions include, but are not limited to, the following:

    (a)    whether the metformin manufactured by Defendants contains dangerously high levels of NDMA, thereby breaching the implied warranties made by Defendants and making metformin unfit for human consumption and therefore unfit for its intended purpose;

    (b)    whether Defendants knew or should have known that metformin contained elevated levels of NDMA prior to selling the medication, thereby constituting fraud and/or fraudulent concealment;

    (c)    whether Defendants have unlawfully converted money from Plaintiff and the Class and Subclass;

(d)      whether Defendants are liable to Plaintiff and the Class and Subclass for

unjust enrichment;

(e)      whether Defendants are liable to Plaintiff and the Class and Subclass for

fraudulent concealment;

(f)      whether Plaintiff and the Class and Subclass have sustained monetary loss

and the proper measure of that loss;

(g)      whether Plaintiff and the Class and Subclass are entitled to declaratory and

injunctive relief;

(h)      whether Plaintiff and the Class and Subclass are entitled to restitution and

disgorgement from Defendants; and

(i)      whether the marketing, advertising, packaging, labeling, and other

promotional materials for metformin are deceptive.

31.      **Typicality.**  Plaintiff's claims are typical of the claims of the other members of

the Class and Subclass in that Defendants mass marketed and sold defective metformin to

consumers throughout the United States.  This defect was present in all of the metformin

manufactured by Defendants.  Therefore, Defendants breached its implied warranties to Plaintiff

and Class and Subclass members by manufacturing, distributing, and selling the defective

metformin.  Plaintiff's claims are typical in that he was uniformly harmed in purchasing and

consuming the defective metformin.  Plaintiff's claims are further typical in that Defendants

deceived Plaintiff in the very same manner as they deceived each member of the Class and

Subclass.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

32.      **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the

interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in

complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class and Subclass.

33.    **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class and Subclass, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class and Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

34.    In the alternative, the Class and Subclass may also be certified because:

(a)    the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and Subclass members that would establish incompatible standards of conduct for the Defendants;

(b)    the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interests of other Class

and Subclass members not parties to the adjudications, or substantially

impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to

the Class and Subclass as a whole, thereby making appropriate final

declaratory and/or injunctive relief with respect to the members of the

Class and Subclass as a whole.

<u>**COUNT I**</u>
**Breach Of The Implied Warranty Of Merchantability**
**(On Behalf Of The Class And Subclass)**

35.    Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

36.    Plaintiff brings this claim individually and on behalf of the members of the

proposed Class and the Subclass against Defendants.

37.    Defendants, as the designer, manufacturer, marketer, distributor, and/or seller,

impliedly warranted that metformin (i) would not contain elevated levels of NDMA and (ii) is

generally recognized as safe for human consumption.

38.    Defendants breached the warranty implied in the contract for the sale of the

defective metformin because it could not pass without objection in the trade under the contract

description, the metformin was not of fair or average quality within the description, and the

metformin was unfit for its intended and ordinary purpose because the metformin manufactured

by Defendants was defective in that it contained elevated levels of carcinogenic and liver toxic

NDMA, and as such is not generally recognized as safe for human consumption.  As a result,

Plaintiff and Class and Subclass members did not receive the goods as impliedly warranted by

Defendants to be merchantable.

39.    Plaintiff and Class and Subclass members purchased metformin in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

40.    The metformin was not altered by Plaintiff or Class and Subclass members.

41.    The metformin was defective when it left the exclusive control of Defendants.

42.    Defendants knew that the metformin would be purchased and used without additional testing by Plaintiff and Class and Subclass members.

43.    The defective metformin was defectively manufactured and unfit for its intended purpose, and Plaintiff and Class and Subclass members did not receive the goods as warranted.

44.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased metformin on the same terms if they knew that metformin contained harmful levels of NDMA, and is not generally recognized as safe for human consumption; and (b) metformin does not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass)**

45.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

46.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

47.    Plaintiff and the Class and Subclass conferred a benefit on Defendants in the form of monies paid to purchase Defendants' defective metformin.

48.    Defendants voluntarily accepted and retained this benefit.

49.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for medications unfit for human use, it would be unjust and inequitable for the Defendants to retain it without paying the value thereof.

<u>**COUNT III**</u>
**Fraudulent Concealment**
**(On Behalf Of The Class and Subclass)**

50.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

52.    Defendants had a duty to disclose material facts to Plaintiff and the Class and Subclass given their relationship as contracting parties and intended users of metformin. Defendants also had a duty to disclose material facts to Plaintiff and the Class and Subclass, namely that they were in fact manufacturing, distributing, and selling harmful metformin unfit for human consumption, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

53.    Defendants possessed knowledge of these material facts.  Since at least December 2019, Defendants have been aware that NDMA was detected in metformin-containing medications in other nations.[12]  During this time, Plaintiff and Class and Subclass members were using their medications without knowing they contained dangerous levels of NDMA.

54.    Defendants failed to discharge their duty to disclose these materials facts.

---

[12] *FDA Investigates NDMA in Metformin*, U.S. PHARMACIST (Dec. 20, 2019), https://www.uspharmacist.com/article/fda-investigates-ndma-in-metformin (last accessed Mar. 9, 2020).

55.    In so failing to disclose these material facts to Plaintiff and the Class and Subclass, Defendants intended to hide from Plaintiff and the Class and Subclass that they were purchasing and consuming metformin with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

56.    Plaintiff and the Class and Subclass reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective metformin manufactured sold by Defendants had they known it contained unsafe levels of NDMA.

57.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiff and the Class and Subclass suffered damages in the amount of monies paid for the defective metformin.

58.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

**COUNT IV**
**Fraud**
**(On Behalf Of The Class and Subclass)**

59.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

60.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

61.    As discussed above, Defendants provided Plaintiff and Class and Subclass members with materially false or misleading information about the metformin manufactured by Defendants.  Specifically, Defendants marketed metformin as safe for human consumption.  As indicated above, however, these representations are false and misleading as Defendants' metformin medications contained elevated levels of NDMA.

62.     The misrepresentations and omissions of material fact made by Defendants, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and Subclass members to purchase defective metformin.

63.     Defendants knew or should have known that its metformin was contaminated with this harmful impurity, but continued to manufacture it nonetheless.  Since at least December 2019, Defendants have been aware that NDMA was detected in metformin medicines in other nations.[13]  During this time, Plaintiff and Class and Subclass members were using the medication without knowing it contained dangerous levels of NDMA.

64.     The fraudulent actions of Defendants caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

65.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT V
### Conversion
### (On Behalf Of The Class And Subclass)

66.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

68.     Plaintiff and the Class and Subclass have an ownership right to the monies paid for the defective metformin manufactured by Defendants.

---

[13] *FDA Investigates NDMA in Metformin*, U.S. PHARMACIST (Dec. 20, 2019), https://www.uspharmacist.com/article/fda-investigates-ndma-in-metformin (last accessed Mar. 9, 2020).

69.     Defendants have wrongly asserted dominion over the payments illegally diverted to them for the defective metformin.  Defendants have done so every time that Plaintiff and the Class and Subclass bought metformin over the counter.

70.     As a direct and proximate cause of Defendants' conversion, Plaintiff and the Class and Subclass suffered damages in the amount of the payments made for each time they bought metformin over the counter.

## COUNT VI
### Violation Of California's Consumers Legal Remedies Act,
### Cal. Civ. Code §§ 1750, *et seq.*

71.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

72.     Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants.

73.     California's Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

74.     Plaintiff and members of the Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they bought metformin for personal, family, or household purposes.

75.     Defendants are a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods" within the meaning of sections 1761(a) and 1770.

76.     Plaintiff, the other members of the Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

77.     Defendants' acts and practices, as alleged in this complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions (the sale of metformin).

78.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other members of the Subclass that metformin (i) would not contain elevated levels of NDMA and (ii) is generally recognized as safe for human consumption.  In fact, the metformin contained elevated levels of NDMA and was not safe for human consumption.

79.     These misrepresentations constitute "unfair or deceptive acts or practices" that are prohibited by the CLRA, Cal. Civ. Code §§ 1770(a)(5); 1770 (a)(7); 1770(a)(9); and 1770(a)(16).

80.     Further, Defendants concealed from and failed to disclose to Plaintiff and the Subclass that its metformin did not conform to the product's labels, packaging, advertising, and statements in that it contained elevated levels of NDMA and was not safe for human consumption.

81.     Defendants had a duty to disclose to Plaintiff and members of the Subclass the true quality, characteristics, ingredients, nutrient levels, and suitability of the metformin because Defendants was in a superior position to know the true nature of their products and Defendants knew that Plaintiff and members of the Subclass could not reasonably have been expected to learn or discover that the metformin was misrepresented in the packaging, labels, advertising, and websites prior to purchasing the metformin.

82.     The facts concealed or not disclosed by Defendants to Plaintiff and members of the Subclass were material in that a reasonable consumer would have considered them important

when deciding whether to purchase the metformin.

83.     Plaintiff and Subclass members' reliance on these omissions was reasonable given Defendants' advertising, representations, warranties, and general promotions of the Metformin.

84.     Plaintiff and members of the Subclass did not know that Defendants was concealing or otherwise omitting material facts.

85.     As a direct and proximate result of Defendants' violations, Plaintiff and the Subclass are entitled to injunctive relief ensuring Defendants aresues a recall of its metformin medications and complies with all proper quality and safety standards going forward.

86.     On April 7, 2020, prior to filing this action, a CLRA notice letter was sent to Defendants that complies in all respects with California Civil Code § 1782(a).  Plaintiff's counsel sent Defendants the letter via certified mail, return receipt requested, advising Defendants that it is in violation of the CLRA and demanding that it cease and desist from such violations.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as **Exhibit A**.

**COUNT VII**
**Violation Of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200,** *et seq.*

87.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

88.     Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants.

89.     By committing the acts and practices alleged herein, Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to the Class, by engaging in unlawful, fraudulent, and unfair conduct.

90.     Defendants violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civil Code §§ 1770(a)(5), (a)(7), (a)(9), and (a)(16).

91.     Defendants' acts and practices described above violate the UCL's proscription against engaging in fraudulent conduct.

92.     As more fully described above, Specifically, Defendants marketed metformin as safe for human consumption.  As indicated above, however, these representations are false and misleading as Defendants' metformin medications contained elevated levels of NDMA.  These representations were likely to deceive reasonable consumers.

93.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

94.     Plaintiff and the other Subclass members suffered a substantial injury by virtue of buying metformin that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the contaminated nature of its metformin medication, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled metformin medication.

95.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the contaminated nature of the metformin medication.

96.     Plaintiff and the other Subclass members had no way of reasonably knowing that the metformin medication they purchased was not as marketed, advertised, packaged, or labeled. Plaintiff and the other Subclass members are not able to test for the presence of NDMA in their metformin medications.  Thus, Plaintiff and the other Subclass members could not have reasonably avoided the injury each of them suffered.

97.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Subclass.

98.     Defendants' violation has continuing and adverse effects because Defendants' unlawful conduct is continuing, with no indication that Defendants intends to cease this fraudulent course of conduct.  The public and class members are subject to ongoing harm because Defendants have not issued a recall for its contaminated metformin medication.

99.     Plaintiff and the Subclass lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased metformin on the same terms if they knew that metformin contained harmful levels of NDMA, and is not generally recognized as safe for human consumption; and (b) metformin does not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

100.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to: (a) provide restitution to Plaintiff and the other Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's and the Subclass' attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

> (a)     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the

representative for the Class and Subclass and Plaintiff's attorneys as Class Counsel;

(b)     For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  June 30, 2020                     Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    _/s/ Andrew J. Obergfell_____
            Andrew J. Obergfell

Andrew J. Obergfell
Max S. Roberts *(pro hac vice* app. forthcoming*)*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: aobergfell@bursor.com
            mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher *(pro hac vice* app. forthcoming*)*
Neal J. Deckant *(pro hac vice* app. forthcoming*)*

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
        ndeckant@bursor.com

*Attorneys for Plaintiff*